**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

PAUL P.,

               Plaintiff,

       -v-                                 5:24-CV-420 (AJB/TWD)

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

### I.  INTRODUCTION

On March 26, 2024, plaintiff Paul P.[1] ("plaintiff") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Dkt. No. 1.  Along with his complaint, plaintiff also moved for leave to proceed _in forma pauperis_ ("IFP Application").  Dkt. No. 3.  The matter was referred to U.S. Magistrate Judge Thérèse Wiley Dancks, who granted plaintiff's IFP Application.  Dkt. No. 7.  Thereafter, the Commissioner filed a certified copy of the Administrative Record, Dkt. No. 8, and a briefing schedule was set for the appeal, Dkt. No. 10.

However, on August 13, 2024, plaintiff's counsel moved to withdraw, citing remarks that plaintiff made on social media about the quality of his firm's representation.  Dkt. No. 11.  Judge

---

[1] On May 1, 2018, the Judicial Conference's Committee on Court Administration and Case Management issued a memorandum that encouraged courts to better protect the privacy of non-governmental parties in Social Security matters by using only the first name and last initial of the claimant in published opinions.

Dancks placed that motion under seal "due to attorney/client privilege information" included in the filing, stayed the existing deadlines on submissions related to plaintiff's appeal, and directed the parties to submit briefing on the representation issue instead.  Dkt. No. 12.

On February 11, 2025, after considering plaintiff's response, Dkt. No. 14, Judge Dancks granted the motion to withdraw, reasoning that the relationship between plaintiff and his counsel had become irreconcilable.[2]  Dkt. No. 16.  At that time, Judge Dancks gave plaintiff forty-five days in which to notify the Court whether he had secured new counsel or would be proceeding *pro se* in this appeal.  *Id*.  Plaintiff sought and received several extensions of time in which to locate substitute counsel.  Dkt. Nos. 20, 22, 24.  But after a four-month period of time elapsed without the appearance of a different attorney on plaintiff's behalf, Judge Dancks "consider[ed] plaintiff to be appearing pro se" and set a renewed briefing schedule for the appeal.  Dkt. No. 24.

The parties have briefed the matter in accordance with General Order 18, which provides that an appeal taken from a final decision denying benefits will be treated as if the parties have cross-moved for a judgment on the pleadings.  Dkt. No. 25, 27, 28.[3]  Plaintiff's appeal will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

On March 17, 2021, plaintiff applied for SSI, alleging that his short-term memory loss, learning disability, and anxiety rendered him disabled beginning on May 2, 2020.  R. at 16, 257, 273, 278.[4]  Plaintiff's claim was denied on August 2, 2021, R. at 131–44, and denied again after

---

[2]  The case was initially assigned to U.S. District Judge Anne M. Nardacci, but reassigned to this Court shortly before Judge Dancks granted counsel's motion to withdraw.  Dkt. No. 15.

[3]  Non-party Mary P., plaintiff's mother, submitted a letter on his behalf.  Dkt. No. 27.  In light of plaintiff's *pro se* status, the Court has considered this non-party filing as part of the appeal.

[4]  Citations to "R." refer to the Administrative Record.  Dkt. No. 8.

reconsideration on November 9, 2021, R. at 146–57.  At plaintiff's request, a video hearing was held before Administrative Law Judge ("ALJ") Kenneth Theurer on March 6, 2023.  R. at 42–64. Plaintiff, represented by non-attorney Kevin Dwyer, appeared and testified.  *Id*.  In addition, the ALJ heard testimony about certain job requirements from Vocational Expert Jessica Conard.  *Id*.

On March 14, 2023, the ALJ issued a written decision denying plaintiff's application for benefits.  R. at 16–29.  The ALJ's decision became the final decision of the Commissioner on February 6, 2024, when the Appeals Council denied plaintiffs' request for review.  R. at 1–7.

## III.    LEGAL STANDARD

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ALJs follow a five-step sequential evaluation process to decide whether the claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920(a)(4).[5]  The burden of proof for the first four steps is

---

[5] The Act provides disability benefits under two programs: Title II, which governs Disability Insurance Benefits ("DIB"), and Title XVI, which governs Supplemental Security Income ("SSI").  *See, e.g.*, *Smith v. Berryhill*, 587 U.S. 471, 475 (2019).  The applicable federal regulations direct ALJs to follow the same five-step evaluation for claims under either program.  Accordingly, "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Dep't of Health & Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).

on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). "In step five, the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022); *see also Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (explaining step-five burden shift is considered "limited" because the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is still able to work and the work he is doing qualifies as "substantial gainful activity," he is not disabled within the meaning of the Act, regardless of his medical condition or any other factors. §§ 404.1520(b), 416.920(b).

However, if the claimant has not been working at a level that qualifies as "substantial gainful activity," step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits" a claimant's physical or mental ability to do basic work activities. §§ 404.1520(c), 416.920(c).

If the claimant has a "severe" impairment or combination of impairments, at step three the ALJ must determine whether the impairment(s) meet or equal any of the impairments listed in Appendix 1 (the "Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's "severe" impairment(s) meet or medically equal one or more of these Listings, the claimant will be found presumptively disabled regardless of any other factors. §§ 404.1520(d), 416.920(d).

However, if the claimant is not found presumptively disabled under the Listings, at step four the ALJ must determine whether, "based on all the relevant medical and other evidence in the record," 20 C.F.R. §§ 404.1520(e), 416.920(e), the claimant still has the "residual functional capacity" ("RFC") to do his "past relevant work." §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's RFC is compatible with "the physical and mental demands" of his "past relevant work," he is not disabled within the meaning of the Act. §§ 404.1520(f), 416.920(f).

Finally, if the claimant cannot perform his "past relevant work," the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to make the adjustment to other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (f)–(g), 416.920(a)(4)(v), (f)–(g). If so, he is not disabled. *Id.* However, if there is no other work in the national economy that the claimant can perform consistent with his RFC, the claimant will be found disabled within the meaning of the Act. *Id*.

The Act provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration. 42 U.S.C. §§ 405(g), 1383(c)(3). This scope of this judicial review is fairly deferential. *See, e.g.*, *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Review limited to whether the Commissioner applied the correct legal standards to his analysis and, if so, whether the decision is supported by "substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

The phrase "substantial evidence" is a term of art used in the context of judicial review of an agency's factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence is a "very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir.

2012).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).  "Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).

Importantly, though, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the final decision should be reversed even if there is "substantial evidence" in the record.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

## IV.    DISCUSSION

The ALJ applied the five-step sequential analysis to plaintiff's SSI benefits claim and determined that: (1) plaintiff had not engaged in substantial gainful activity since March 17, 2021, the SSI application date; (2) plaintiff's general anxiety disorder, depressive disorder, and intellectual disability were "severe" impairments; and (3) these "severe" impairments, whether considered individually or in combination, did not meet or equal any of the Listings.  R. 17–23.

At step four, the ALJ determined that plaintiff retained the RFC to perform a "full range of work at all exertional levels" with a partial set of non-exertional limitations, *i.e.*:

> the claimant retains the ability to do work limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements as would be experienced on an assembly line; involving only simple, work-related decisions; with few, if any, work place changes.  The claimant can interact with supervisors, coworkers, and the public on an occasional basis throughout the work day after learning his job duties from an instructional or demonstrational lesson.

R. at 23.

Next, the ALJ determined that plaintiff had no past relevant work. R. at 28. However, after considering plaintiff's age and education in light of the RFC and the Vocational Expert's testimony, the ALJ found that plaintiff retained the physical and mental abilities to perform the job duties of a "stores laborer," a "cleaner," or a "laundry worker." R. at 28–29. Because these representative jobs existed in significant numbers in the national economy, the ALJ concluded that plaintiff was not disabled between March 17, 2021, the application date, and March 14, 2023, the date of his written decision. R. at 29. Accordingly, the ALJ denied plaintiff's application for benefits. *Id*.

### A. Plaintiff's Appeal

Plaintiff's four-page brief states that the ALJ should have found him disabled because of the combined effect of his mental impairments, including his dyslexia, short-term memory loss, anxiety, panic attacks, and learning disabilities. Dkt. No. 25. As plaintiff explains, he suffered a concussion from a childhood bicycle accident that left him with short-term memory loss. *Id*. In addition, he suffered a dirt bike accident that caused him some physical trauma. *Id*. Finally, he states that he recently suffered a lightning injury and is now seeing a neurologist. *Id*. Plaintiff's mother's submission reiterates that he suffers from memory problems and learning disabilities, noting that it took him a long time to write the letter to the Court. Dkt. No. 27.

The Commissioner responds that plaintiff's argument amounts to an improper request for this Court to reweigh the evidence in a way that is more favorable to him. Dkt. No. 28 at 7. In the Commissioner's view, the ALJ correctly applied the five-step sequential evaluation process, appropriately considered the medical evidence of plaintiff's mental and physical limitations, and reasonably relied on medical opinions from psychological consultants to conclude that, despite limitations in various areas of mental functioning, plaintiff retained the RFC to perform a range

of simple or unskilled work.  *Id*. at 7–12.  In doing so, the Commissioner argues that the ALJ permissibly discounted the considerably more restrictive findings from plaintiff's primary care provider and partially discounted plaintiff's subjective testimony about the nature and extent of his symptoms.  *Id*. at 13–15.  Finally, as for step five, the Commissioner contends that the ALJ's finding was supported by substantial evidence, and in particular the job-related testimony offered at the hearing by the Vocational Expert.  *Id*. at 15–17.

Because plaintiff is *pro se*, the Court has gone beyond the issues referenced in plaintiff's brief and independently reviewed the hearing transcript, R. at 42–64, the ALJ's written decision, *id*. at 16–29, and the Commissioner's brief, Dkt. No. 28.  This independent review confirms that the ALJ applied the correct legal standards and supported his findings with substantial evidence in the record.

An examination of the substance of plaintiff's arguments confirms that—with the limited exception of certain "new" evidence from June 27, 2023, which will be discussed separately near the conclusion—the ALJ adequately considered the available record evidence of the physical and mental impairments identified by plaintiff, reached supportable conclusions about the nature and extent of those impairments, and permissibly concluded that plaintiff was not "disabled" within the meaning of the Act.

The ALJ's analysis begins in earnest at step two, which required him to determine whether plaintiff had one or more "severe" impairments, *i.e.*, a condition that "significantly limits" the claimant's physical or mental ability to do "basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" include things like walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling seeing, hearing, speaking, understanding, remembering and carrying out instructions, using judgment, and responding appropriately to

supervisors, co-workers, and usual work situations.  *See, e.g.*, *Taylor v. Astrue*, 32 F. Supp. 3d 253, 256 (N.D.N.Y. 2012).

This "severity" requirement is *de minimis*—it is meant to screen out only the weakest of claims.  *Nedzad O. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 37, 43 (N.D.N.Y. 2021).  "However, despite this lenient standard, the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe."  *Id*. (cleaned up).  "Rather, to be considered severe, an impairment or combination of impairments must cause more than minimal limitations in a claimant's ability to perform work-related functions."  *Id*.

A review of the ALJ's written decision confirms that he considered plaintiff's history of physical ailments, including the medical treatment that he received for his bicycle and dirt bike crashes in his youth, before concluding that the *current* effect of these conditions did not qualify as "severe" within the meaning of the Regulations.[6]  R. at 18 (citing Exhibits B14F, B15F, B17F, and B19F–B22F).  As the Commissioner points out, plaintiff has filed six prior SSI applications (going back to 2003) that have been denied.  R. at 273–74.

Plaintiff's medical history was considered as part of those prior SSI applications.  Absent a compelling reason to do so, the ALJ was not obligated to revisit, on a wholesale basis, this historical evidence—especially when it predates the time period relevant to plaintiff's *current* SSI application, which alleged disability beginning in May of 2020.  *See, e.g.*, *Melissa R. v. Comm'r of Soc. Sec.*, 2021 WL 4844153, at *4 (N.D.N.Y. Oct. 18, 2021) (noting consideration of pre-onset-date evidence is not required because it is ordinarily irrelevant).

---

[6] Plaintiff also raised these accidents and injuries during his testimony before the ALJ.  R. at 50–51, 53–54.

Although the ALJ discounted the severity of plaintiff's *physical* impairments, the ALJ found that plaintiff's *mental* impairments, *i.e.*, his general anxiety disorder, depressive disorder, and intellectual disability, were "severe" impairments at step two.  R. at 17.  "Where, as here, mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a 'psychiatric review technique' (sometimes referred to as a 'special technique')."  *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 151 (N.D.N.Y. 2021) (cleaned up).

This so-called "special technique" is used by ALJs to determine, as a threshold matter, whether a claimant has one or more medically determinable mental impairments.  *Amanda R.*, 556 F. Supp. 3d at 151.  If the claimant suffers from one or more medically determinable mental impairments, "[t]his technique also enables administrative law judges to determine whether [those] medically determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)."  *Id*.  Briefly stated, this psychiatric review technique requires the ALJ to assess the degree of functional limitation present in four broad areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself.  20 C.F.R. §§ 405.1520a(c)(3); 416.920a(c)(3).

A review of the ALJ's narrative discussion reflects that he applied this special technique to assess plaintiff's mental impairments.  *See* R. at 21.  The ALJ found that plaintiff's medical history established that he suffered from general anxiety disorder, depressive disorder, and intellectual disability.  R. at 17–18.  The ALJ analyzed the functional areas, determined that plaintiff had "moderate" limitations in those four domains, *id*. at 19–20, but concluded that the degree of plaintiff's impairments were insufficient to meet or medically equal a Listing at step

three, *id.* at 18–23.[7]  There was no error in these findings.  *Cf. Brault v. Comm'r of Soc. Sec.*, 683

F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts,

we can reject those facts only if a reasonable factfinder would have to conclude otherwise.").

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe'

impairments but determines at step three that the claimant is not presumptively disabled, the ALJ

must go on to make an RFC finding, which is an assessment of 'what an individual can still do

despite his or her limitations." *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192

(N.D.N.Y. 2019) (cleaned up).  "In making a residual functional capacity determination, the ALJ

must consider a claimant's physical abilities, mental abilities, [and subjective symptomatology],

including pain and other limitations which could interfere with work activities on a regular and

continuing basis." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y.

2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other

evidence in the record, including the claimant's credible testimony, objective medical evidence,

and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368

F. Supp. 3d 626, 640 (S.D.N.Y. 2019).  "In practice, administrative law judges rely principally

on medical source opinion and subjective testimony when assessing impaired individuals' ability

to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation

omitted).

---

[7]  The ALJ noted that plaintiff did not receive a cognitive assessment in connection with this application, but that he had taken an IQ test as part of a prior application from 2018.  R. at 23.  At that time, plaintiff's full-scale IQ score was 71, which "indicated the claimant was functioning in the borderline range of intelligence." *Id.*  But the ALJ appropriately considered, and reasonably concluded, that this score did not meet the criteria of Listing § 12.05.  *See, e.g.*, *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (explaining Regulations require more than a low IQ score to establish necessary deficits in relative adaptive functioning and collecting cases).

Plaintiff's best argument would turn on the ALJ's treatment of medical opinion evidence from Leland Jackson, M.D. and Kimberly Sandford, FNP, two treating providers at Camillus Family Health Associates.  The record indicates that Dr. Jackson, with the assistance of FNP Sandford, has been plaintiff's primary care provider since May of 2012.  R. at 27.  As relevant here, Dr. Jackson submitted a medical source statement dated July 2, 2021, and supplemented it with a notation on February 16, 2023.  R. at 532–35, 628–31.

Among other things, Dr. Jackson opined that plaintiff is "unable to meet competitive standards" in several mental areas ordinarily required to perform simple or unskilled work.  R. at 532–35, 628–31; R. at 533 (defining "unable to meet competitive standards" as someone who "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting").

Historically, an opinion from a treating physician enjoyed special treatment: it received *controlling* weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence in [the] record."  *Amanda R.*, 556 F. Supp. 3d at 153 (citation omitted).  However, the SSA promulgated new Regulations governing the evaluation of medical source evidence for claims filed on or after March 27, 2017.  *See, e.g.*, *Colgan v. Kijakazi*, 22 F.4th 353, 359 n.2 (2d Cir. 2022).

Under the current regime, the ALJ must evaluate the persuasiveness of "all of the medial opinions" in the record based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship[8] with the claimant; (4) the source's area of

_____

[8]  This "relationship" factor includes: (i) the length of the treating relationship; (ii) the frequency of examination; (iii) the purpose of the treating relationship; (iv) the extent of the treating relationship; and (v) whether the source examined the claimant.  20 C.F.R. §§ 404.1520c(c)(3); 416.920c(c)(3).

specialization; and (5) other relevant case-specific factors that tend to support or contradict a medical opinion or medical finding.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The two most important factors are supportability and consistency.  §§ 404.1520c(b)(2), 416.920c(b)(2).  Although the Regulations explicitly obligate the ALJ to explain how he or she considered these two specific factors, "an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly."  *Amanda R.*, 556 F. Supp. 3d at 154.

The record reflects that the ALJ applied this overarching legal standard and appropriately discounted Dr. Jackson's extremely restrictive mental findings after examining opinion evidence from specialists, including less restrictive medical opinions offered by consultative psychological examiners Corey Anne Grassl, Psy.D, and Marisol Valencia-Payne, Psy.D.  R. at 554–57 (Dr. Grassl); 595–99 (Dr. Valencia-Payne).  Dr. Grassl and Dr. Valencia-Payne examined plaintiff, recognized that he suffered from mental limitations, but opined that those limitations were, at most, "moderate."  *See id*.

The ALJ also considered evidence from non-examining state agency psychology analysts Y. Sherer, Psy.D, and S. Hennessey, Ph.D.  R. at 27 (citing Exhibits B2A and B5B).  Dr. Sherer and Dr. Hennessey did not examine plaintiff, but reviewed the available evidence, determined that plaintiff suffered from mental limitations, and concluded that the functional extent of those limitations were, at most, "moderate."  *Id*.

In short, the ALJ was faced with a recurring issue: the treating and consulting opinions offered conflicting views on the nature and extent of the plaintiff's mental limitations.  On one hand was Dr. Jackson's opinion, which offered a severely restrictive assessment of plaintiff's various mental impairments.  On the other hand were the examining opinions of Drs. Grassl and

- 13 -

Valencia-Payne and the non-examining opinions of Drs. Sherer and Hennessey, who together opined that plaintiff's mental limitations were not nearly as severe as Dr. Jackson had opined.

To be sure, it can be difficult in the context of mental illness to extrapolate a plaintiff's "longitudinal mental health" from a single examination, which offers "a one-time snapshot of a claimant's status." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). But ALJs are entitled to rely on both examining and non-examining consultants when assessing the nature and extent of a claimant's physical or mental limitations. *See, e.g.*, *Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 164–65 (W.D.N.Y. 2020) (collecting cases).

The ALJ explored the conflicting medical opinion evidence offered by the treating and consulting providers in his written decision. The ALJ dutifully evaluated the persuasiveness of these opinions in accordance with the current rules. Among other things, the ALJ engaged in a discussion of the relative *supportability* and *consistency* of these medical opinions. Ultimately, the ALJ discounted Dr. Jackson's opinion in favor of the opinions from the consultants.

There is no legal error in that approach. *See, e.g.*, *Ivy M. v. Comm'r of Soc. Sec.*, 2024 WL 4650857, at *7 (N.D.N.Y. Jan. 24, 2024). To the contrary, it is well-settled that a claimant with "moderate" limitations can ordinarily do simple or "unskilled work." *See, e.g.*, *Rushford v. Kijakazi*, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (affirming denial of benefits where ALJ found the plaintiff with "moderate" mental limitations could engage in "unskilled, simple, and routine tasks").

The final question is what to do about plaintiff's proposed "new" evidence of a lightning injury on June 27, 2023. Dkt. No. 25. This evidence was not before the ALJ, since he issued his decision on March 14, 2023. R. at 29. The Commissioner argues that plaintiff cannot show that this "new" evidence is material to the relevant time period for this claim. Dkt. No. 28 at 17.

- 14 -

Generally, "evidence not contained in the administrative record may not be considered by a district court when reviewing the findings of the Commissioner." *Clark v. Saul*, 444 F. Supp. 3d 607, 625 (S.D.N.Y. 2020) (citation omitted). However, the court can remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

To justify a remand, the plaintiff must show that: (1) the evidence is "new and not merely cumulative of what is already in the record"; (2) the evidence is "material," that is, "both relevant to the claimant's condition during the time period for which benefits were denied and probative"; and (3) "good cause for [his] failure to present the evidence earlier." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).

Plaintiff's new medical evidence does not meet this standard. Based on what plaintiff has represented, the new evidence is related to an injury he suffered on June 27, 2023, which is after the time period relevant to the current benefits claim. Accordingly, this "new" evidence could not be "material" within the meaning of this standard. *Tirado*, 842 F.2d at 597 ("The concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the Secretary to decide the claimant's application differently.").

## IV.   CONCLUSION

After reviewing the entire record, including the available briefs, the ALJ's decision, the transcript of the hearing, as well as the medical and other record evidence, the Commissioner's decision must be affirmed. To the extent that plaintiff's "new" evidence, or the force of other available evidence, suggests that he suffers from a worsening impairment or combination of impairments, the proper course of action would likely be for plaintiff to submit a new application for Social Security benefits, possibly with the assistance of counsel.

Therefore, it is

ORDERED that

1.  The Commissioner's motion is GRANTED;

2.  Plaintiff's motion is DENIED;

3.  The Commissioner's final decision is AFFIRMED; and

4.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

**IT IS SO ORDERED.**

Dated:  September 22, 2025
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge